**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **CARROL OWENS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:11-0864** |
| | ) | |
| **JOEL ZIEGLER,** | ) | |
| **Warden, FCI Beckley,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On November 7, 2011, Petitioner, acting *pro se* and incarcerated at FCI Beckley, located in

Beckley, West Virginia, filed an Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus*

by a Person in State or Federal Custody.[1] (Document No. 1.) Petitioner argues that the Bureau of

Prisons [BOP] is improperly denying him a sentence reduction pursuant to 18 U.S.C. § 3621. (Id.,

pp. 2 - 7.) Petitioner explains that on October 6, 2011, the "RDAP community found out that the

History Channel would not longer be viewed on the educational TV" because "one black inmate

complained that the History Channel showed nothing but racist propaganda." (Id., p. 2.) Petitioner

states that "on October 12, 2011, I tried to diplomatically resolve these issues by giving a copy of

a complaint to the Drug Treatment Specialist Carnell for review, however after a morning meeting

on October 13, 2011, Carnell instructed his Inmate Hit Team to 'deal with me.'" (Id., p. 4 - 5.) On

October 17, 2011, Petitioner states that he filed a BP-9 grievance complaining of retaliation by

Carnell. (Id.) Petitioner alleges that on October  18, 2011, "I was kicked out of the RDAP program

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less
stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See
Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

which subjected me to further acts of retaliation." (<u>Id.</u>) Petitioner further states that Carnell has

violated "multiple Standards of Employee Conduct." (<u>Id.</u>, p. 3.)

First, Petitioner argues that he has been "denied a protected liberty interest without due

process." (<u>Id.</u>, p. 5.) Specifically, Petitioner states that the "BOP is required to provide me with drug

and alcohol abuse rehabilitation services as ordered by the judge on the day of sentencing as

reflected in the Judgment & Commitment recommendation." (<u>Id.</u>) Petitioner also states that Carnell

violated 28 C.F.R. § 550.53(g) by removing Petitioner from RDAP without giving him a formal

warning.[2] (<u>Id.</u>) Third, Petitioner alleges that he has been "denied safe and secure environment and

subjected to cruel and unusual punishment in violation of the 8th Amendment." (<u>Id.</u>, p. 6.) Petitioner

explains that "Carnell constantly creates problems in the RDAP community by stirring up racial

conflict (as with the TV) and creating an Inmate Hit Team to 'deal with' unruly inmates who violate

Carnell's rules." (<u>Id.</u>) Fourth, Petitioner states that he has been "denied equal protection against

racial discrimination in violation of the 1st, 5th, and 14th Amendments."[3] (<u>Id.</u>, p. 7.) Petitioner explains

that Carnell shows preferential treatment to black inmates because he approved Black Entertainment

---

[2] BOP regulations are clearly written in view of the constitutionally required minimum, but the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation. *See Myers v. Klevenhager*, 97 F.3d 91, 94 (5th Cir 1996); *Giovanni v. Lynn*, 48 F.3d 908, 913 (5th Cir. 1995), *cert. denied*, 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995). The undersigned notes additionally that the Supreme Court has indicated that prison regulations are not designed to confer rights on or benefits to inmates. Rather, they are primarily designed to guide correctional officials in the administration of prisons. *Sandin v. Conner*, 515 U.S. 472, 481- 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

[3] The Court notes that Petitioner's Eighth Amendment and equal protection claims are not cognizable in *habeas* proceedings. *Habeas* relief under 28 U.S.C. § 2241 is available when a prisoner demonstrates that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Rose v. Hodges*, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975).

Television and removed the History Channel from the program list. (Id.) Finally, Petitioner claims that he was "denied the liberty interest in the incentive time off of his sentence for the completion of RDAP without due process in violation of the 5th Amendment." (Id.) Petitioner acknowledges that he did not exhaust his administrative remedies, but states that he should be excused because "if I was forced to exhaust my remedies before filing 2241, I will suffer irreparable harm as it takes about six months to exhaust and the fact that I would be scheduled to be released on April 27, 2012, if I were still participating in the program." (Id., p. 4.) As relief, Petitioner requests that the Court "order the BOP at FCI Beckley to re-instate me immediately back into the RDAP program exactly where I would have been had I not been removed with all credits and provisions attributed to such." (Id., p. 7.)

As Exhibits, Petitioner attaches the following: (1) A copy of 28 C.F.R. § 550.53 (Id., pp. 9 - 10); and (2) A copy of Petitioner's "Complaint" to Warden Zeigler dated October 25, 2011 (Id., p. 11.)

On February 6, 2012, Petitioner filed a "Motion for Preliminary Injunction and Temporary Restraining Order." (Document No. 10.) Petitioner states that Carnell continues to "send members of the RDAP program to threaten, harass, intimidate, and attempt to pay plaintiff off with bribes." (Id., p. 2.) Petitioner states that he continues to suffer irreparable harm because "his expulsion from RDAP has seriously altered his release date from incarceration." (Id.) Therefore, Petitioner requests that the "Court issue a Preliminary Injunction and Temporary Restraining Order so that Petitioner may make his intended release date of April 27, 2012 by re-instating Petitioner back into RDAP Program with all privileges and benefits attributed to Petitioner's original group." (Id.)

As Exhibits, Petitioner attaches the following: (1) A copy of Petitioner's "Regional

Administrative Remedy Appeal" dated January 3, 2012 (Remedy No. 662243) (Document No. 10-1, p. 1.); (2) A copy of Warden Joel Ziegler's Response dated November 16, 2011, denying Petitioner's Request for Administrative Remedy (Remedy No. 662243-F1) (Id., p. 2.); (3) A copy of Petitioner's Request for Administrative Remedy dated October 13, 2011 (Remedy No. 662243-F1) (Id., pp. 3 - 4.); (4) A copy of a "Rejection Notice – Administrative Remedy" from the Administrative Remedy Coordinator concerning Remedy No. 664725-F1 (Document No. 10-2, p. 1.); (5) A copy of Petitioner's "Request for Administrative Remedy Informal Resolution Form" dated October 20, 2011 (Id., p. 2.); (6) A copy of Petitioner's Inmate Request to Staff dated October 20, 2011 (Id., p. 3.); (7) A copy of an e-mail from William Carnell to John Grimes dated October 21, 2011, stating that Petitioner was removed from RDAP for failure to progress in treatment (Id., p. 4.); (8) A copy of Petitioner's Request for Administrative Remedy dated October 24, 2011 (Id., pp. 5 - 6.); (9) A copy of 28 C.F.R. § 550.53(g) (Id., pp. 7 - 8.); (10) A copy of Petitioner's "Regional Administrative Remedy Appeal" dated January 17, 2012 (Remedy No. 671477) (Document No. 10-3, p. 1.); (11) A copy of Warden Ziegler's Response dated January 10, 2012, stating that Petitioner's "complaint has been referred to the appropriate investigative component" (Remedy No. 671477-F1) (Id., p. 2.); (12) A copy of Petitioner's Request for Administrative Remedy dated January 3, 2012 (Remedy No. 671477-F1) (Id., p. 3.); and (13) A copy of Petitioner's "Request for Administrative Remedy Informal Resolution Form" dated December 12, 2011 (Id., p. 4.)

## ANALYSIS

In considering an inmate's petition for *habeas* relief under 28 U.S.C. § 2241, the Court must determine whether the Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Rose v. Hodges, 423 U.S. 19, 21, 96 S.Ct. 175, 177,

4

46 L.Ed.2d 162 (1975).

    1.    **Exhaustion Requirement**:

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts consistently require prisoners to exhaust their administrative remedies prior to seeking *habeas* review under Section 2241. See McClung v. Shearin, 90 F. Appx. 444, 445 (4th Cir. 2004)(unpublished)(citing Carmona v. Bureau of Prisons, 243 F.3d 629, 634 (2nd Cir. 2001)); Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994). Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being haled into Court. See Jones v. Bock, 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); McCarthy v. Madigan, 503 U.S. 140, 144-45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The purpose of exhaustion, however, is frustrated "[w]hen an inmate attempts to exhaust an issue before the issue is ripe for review [because] the BOP is deprived of its opportunity to properly address the issue before being haled into court." Specter v. Director, 2010 WL 883733, * 4 (D.S.C. Mar. 5, 2010)(slip copy)(finding that petitioner failed to properly exhaust his claim for RRC placement because "no recommendation or decision had been made in his case yet and would not occur until 17 to 19 months prior to his anticipated release date").

The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the

inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

The undersigned finds that Petitioner failed to fully exhaust his administrative remedies prior to filing the instant action. In his Petition, Petitioner acknowledges that he failed to exhaust his administrative remedies. (Document No. 1.) Petitioner, however, contends that he should be excused

from exhausting his administrative remedies because requiring him to exhaust would result in "irreparable harm." (Id., p. 4.) Petitioner explains that "it takes about six months to exhaust and the fact that I would be scheduled to be released on April 27, 2012, if I were still participating in the program clearly shows that by the time I exhaust my remedies the time of my release date will have passed." (Id.) Thus, the undersigned will consider whether Petitioner should be excused from exhausting his administrative remedies.

Exhaustion may be excused under ceratin circumstances, such as by a showing of futility or irreparable injury. It is clear, however, that exhaustion should not be excused simply because an inmate believes that the length of the exhaustion process will prevent the inmate from receiving a full 12 month RCC placement. See Wright v. Warden, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy)(finding that "[e]xhaustion of administrative remedies is not rendered futile simply because an inmate anticipates he will be unsuccessful in his administrative appeals before the 12-month pre-release mark"); Wright v. Warden, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy); also see Yannucci v. Stansberry, 2009 WL 2421546, * 3 (E.D.Va. Jul. 28, 2009)(slip copy)(finding that inmate's claim that "he ran out of time to complete the administrative exhaustion process prior to filing his petition is not a sufficient excuse for failing to exhaust his [RRC] claims"); and Garrison v. Stansberry, 2009 WL 1160115, * 3 (E.D.Va. Apr. 29, 2009)(slip copy)(explaining that granting review of RRC placement claims because of "time-sensitivity" would encourage the filing of similar petitions before the administrative remedy process has run its course, which would "both undermine the effectiveness of the administrative review process and burden the Court with superfluous claims"). Based on the foregoing, the undersigned finds that Petitioner is not excused from exhausting his administrative remedies and his Petition should be dismissed.

2.     **Right to Early Release**:

Despite Petitioner's failure to exhaust, the undersigned will briefly consider his claim. To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." Id. at 343. Such interests, however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Consequently, to establish a deprivation of a liberty interest with respect to RDAP, Petitioner must show either (1) that he has a legitimate entitlement to admission in RDAP or in early release or (2) that the denial thereof creates an atypical and significant hardship on him in relation to the ordinary incidents of prison life. See Sandin, 515 U.S. at 483-84, 115 S.Ct. at 2299-2300.

Federal prisoners have no constitutional or inherent right to participate in rehabilitative programs while incarcerated. See Moody v. Daggett, 429 U.S. 78, 88, n. 9, 97 S.Ct. 274, 279, n. 9, 50 L.Ed.2d 236 (1976)("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous

loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process."). Likewise, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz, 442 U.S. at 7, 99 S.Ct. at 2104; see also, Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)("[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty."). Title 18, U.S.C. § 3621(e), however, vests the BOP with broad discretionary authority to reduce, by up to one year, the sentence of a federal prisoner convicted of a nonviolent offense, upon the successful completion of a substance abuse treatment program. 18 U.S.C. § 3621(e); see also Lopez v. Davis, 531 U.S. 230, 232, 121 S.Ct. 714, 718, 148 L.Ed.2d 635 (2001). The language of this statute which provides that a prisoner's sentence "may be reduced by the [BOP]," is clearly permissive; the statute does not *mandate* that the BOP reduce a prisoner's sentence upon completion of the substance abuse treatment program.[4] See Lopez v. Davis, 531 U.S. 230, 240, 121 S.Ct. 714, 721, 148 L.Ed.2d 635 (2001)(Affirming that the BOP "may exclude inmates whether categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, in a manner that is not arbitrary or capricious." (Citations omitted.)); Downey v. Crabtree, 100 F.3d 662, 670 (9th Cir. 1996)(Finding that 18 U.S.C. § 3621(e)(2)(B) "reflects unequivocal congressional intent to leave to the Bureau final decisions

---

[4] It should be noted here that the BOP is required to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). This obligatory command, however, does not extend to the granting of the incentive-based reduction of a prisoner's sentence for the successful completion of the substance abuse program.

regarding whether to grant eligible inmates a sentence reduction following successful completion of a drug-treatment program."). Thus, as to substance abuse treatment programs, the BOP has wide discretion in determining both whether an inmate enters such a program in the first instance and whether to grant or deny eligible inmates a sentence reduction under Section 3621(e). See Pelissero, 170 F.3d at 444. Courts have consistently held that inmates who successfully complete substance abuse treatment programs do not have a liberty interest in the provisional early release date and suffer no deprivation of due process rights as a result of the rescission of their consideration for early release. See Zacher v. Tippy, 202 F.3d 1039, 1041 (8th Cir. 2000)("The language of section 3621(e)(2)(B) is permissive, stating that the Bureau 'may' grant early release, but not guaranteeing eligible inmates early release."); Wottlin v. Fleming, 136 F.3d 1032, 1035 (5th Cir. 1998).

Petitioner does not possess a constitutionally protected expectation interest in receiving a sentence reduction. Such a subjective expectation does not arise to the level of a constitutional claim. See Mallette v. Arlington County Employees' Supplemental Ret. Sys. II, 91 F.3d 630, 635 (4th Cir. 1996)("[A] mere expectation of a benefit – even if that expectation is supported by consistent government practice – is not sufficient to create an interest protected by procedural due process. Instead, the statute at issue must create an entitlement to the benefit before procedural due process rights are triggered."). Neither Section 3621(e), the BOP's Program Statement (P.S. 5162.04), nor the Code of Federal Regulations (28 C.F.R. § 550.58), contain explicit mandatory language or standards limiting the BOP's discretion, which may have given rise to a protected liberty interest in early release.[5] See Kentucky Dept. of Corr. v. Thompson, 490 U.S. 454, 109 S.Ct.

---

[5]  Even if Petitioner completes the RDAP, the statute governing the substance abuse treatment program gives discretion to the BOP to determine whether a prisoner should be granted *any* reduction in sentence. See 18 U.S.C. § 3621(e)(2)(B).

1904, 1909-10, 104 L.Ed.2d 506 (1989)(Regulations must contain "explicitly mandatory language" to create a liberty interest.). Accordingly, Petitioner does not possess a statutorily protected expectation interest in early release.

Furthermore, the BOP's determination that Petitioner is ineligible for early release does not constitute an "atypical and significant hardship" on Petitioner in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. at 482, 115 S.Ct. at 2299; Franklin v. District of Columbia, 163 F.3d 625, 634-35 (D.C. Cir. 1998)(Issues of housing and transfers are issues which occur within the "day-to-day management of prisons."). Because nothing in the record indicates that Petitioner's conditions of confinement at FCI Beckley were atypical or resulted in a significant hardship, the undersigned finds that Petitioner has failed to demonstrate a due process violation. Accordingly, Petitioner does not possess a constitutionally protected interest in early release.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Petitioner's Application under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in State or Federal Custody (Document No. 1.), **DENY** Petitioner's Motion for Preliminary Injunction and Temporary Restraining Order (Document No. 10.) and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Petitioner shall have seventeen days

11

(fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*.

Date: August 9, 2012.

R. Clarke VanDervort
United States Magistrate Judge